1114.   RUSHING *v.* MEDICAL COLLEGE OF GEORGIA.

A husband is entitled to the dead body of his wife for burial, and in the condition in which death leaves it, but a slight incision by the attendant surgeon in a hospital, to ascertain the cause of death, authorized by the board of health of the city in which the hospital is located, and in obedience to the requirements of a city ordinance, in order that a certificate of burial may be obtained, not otherwise obtainable, where there is no cutting or removal of any limb or organ, and the incision is properly closed and not visible when the body is clothed, does not infringe this right.

Action for damages, from city court of Richmond county—Judge Hammond presiding. February 29, 1908.

Submitted June 10,—Decided October 12, 1908.

*F. W. Capers,* for plaintiff.   *W. H. Fleming,* for defendant.

HILL, C. J. This case has been reviewed by this court before, and certain questions of law, raised by demurrer, decided in favor of the plaintiff (1 *Ga. App.* 468). It is now before us after a trial on the merits and a verdict in behalf of the defendant, and on an assignment of error in the judgment overruling the plaintiff's motion for a new trial. Two material questions are presented by the record: (1) whether the Medical College of Georgia, the defendant in the court below, is responsible for the tort, if such was committed; and (2) whether a tort is shown to

have been committed. The view that we take of the second ques-
tion makes the first question purely an abstract one and unneces-
sary to be determined. The evidence, briefly stated, is as follows:
Plaintiff's wife, during his absence from home, was taken sick.
The family physician was called in. He decided that it was neces-
sary to take the patient to the city hospital for treatment and
attention. He so informed the members of the family, and was
permitted by them to take the patient to the hospital. He de-
livered her to what was known as the charity ward of the hospital,
taking her to this ward because he had no instructions to the
contrary, and had, on three previous occasions, taken the plain-
tiff himself and two of his children to the charity ward of this
hospital. He had no authority, under the rules of the hospital, to
minister to the patient in that ward of the hospital, and she was
taken in charge by the regular physician or surgeon of the hospi-
tal. This surgeon found the patient in a moribund condition,
past help from either medical or surgical assistance. She died
in the hospital in a few hours after she had been entered. The
physician in charge communicated with the family physician who
brought her there, requesting that he make a burial certificate.
The family physician declined to do so, stating that he was not
able to make a burial certificate, as he did not know the cause of
death. The physician in charge at the hospital could not make a
burial certificate, because he did not know and could not de-
termine, without an autopsy, the cause of death. It was neces-
sary, under an ordinance of the city which was in evidence, to
have a burial certificate by an attending physician, as to the cause
of death, before the body of the deceased could be interred in any
of the cemeteries of the city. In this situation the physician at
the hospital communicated with the chairman of the board of
health of the city, stating to him the facts and asking for his
directions. The chairman of the board of health directed him to
have an autopsy made, for the purpose of determining the cause
of death. In pursuance of this direction and authority, a sur-
geon of the hospital made a slight incision into the cavity of the
abdomen, and discovered that the cause of death was uremic
poison. No limb or organ was cut or removed, the body was in
no way mutilated; the slight incision was sewed up, and was not
discoverable except by an examination. A certificate of burial

was made by the surgeon who performed the autopsy, and the body was delivered to the undertaker for the family, and was buried in one of the city cemeteries. These facts are not disputed, and, we think, utterly refute the gravamen of the complaint made by the plaintiff in his petition, that there was an unauthorized and unlawful mutilation of the body of his wife, "to gratify professional curiosity, or for some other unlawful purpose." This court decided, when the case was here before, that the husband was entitled to the corpse of his wife for burial, and in the condition in which death left it. But where a necessary incision is made by an attendant surgeon in a hospital, by authority of the board of health of the city in which the hospital is situated, in order to ascertain the cause of death, so that a certificate of burial can be made in obedience to the requirements of a city ordinance, where there is no removal of any limb or organ, or cutting or mutilating of either, and where such slight and necessary incision is not visible except by an inspection, and not visible at all when the body is clothed, this right of the husband is not infringed. Farley v. Carson, 8 Ohio Dec. (Reprint), 119 (5 Cin. Law Bulletin, 786). "A physician who performs an autopsy upon a dead body with ordinary care and skill, and in pursuance of the authority of the coroner or a city ordinance, is not liable, in an action by the family of the deceased, for the mutilation of the body without their consent." Cook v. Walley, 1 Col. App. 163 (27 Pac. 950); Young v. College of Physicians, etc., 81 Md. 358 (32 Atl. 177, 31 L. R. A. 540).

Whether the hospital where the autopsy was performed was controlled by and under the management of the defendant, or whether it was under the control and management of the City of Augusta, is immaterial, as it is manifest that no tort was committed by the surgeon who performed the autopsy. It appears that he did his duty, under the facts of the case, decently and with due regard for the rights of the husband, and tenderly toward the dead. The jury so found, and the evidence fully justifies the finding. While we fully share in the sentiment eloquently expressed by counsel for plaintiff in error, that the body of the dead, when the soul has departed, is still sacred to the loved ones, and that they alone are entitled to it for the last tender ministrations of love, yet we can not lose sight of the fact that the laws of health, duly

enacted by municipal authority in order that the living may be protected, are salutary and should be observed.

*Judgment affirmed.*